HENRY TRUELSEN v. TREVANION W. HUGO.[1]

July 11, 1902.

Nos. 13,099—(192).

**Election—Ballot without Initials of Judges.**

The provisions of the general election law which refer to initialing ballots by the election judges are directory, and not mandatory; and an elector who receives an uninitialed ballot from the judges, and in good faith votes the same, is not disfranchised by reason of the failure of the judges to perform their duty.

**Findings—Marking Ballot.**

The findings of the trial court in respect to counting certain ballots sustained, with one exception. A certain ballot was rejected as not being properly marked to disclose the intention of the voter; *held*, it should have been counted for contestant.

Appeal by Henry Truelsen from a judgment of the district court for St. Louis county, Ensign and Cant, JJ., that Trevanion W. Hugo was elected to the office of mayor of the city of Duluth. Affirmed.

*J. B. Richards*, for appellant.

*Mitchell & Reynolds*, for respondent.

LEWIS, J.

At the Duluth city election held in February, 1902, Trevanion W. Hugo, contestee, and Henry Truelsen, contestant, were candidates for the office of mayor. The canvassing board gave the election to the contestee by a plurality of seven votes. Proceedings were commenced by Truelsen contesting the election, and on the recount one hundred twenty-nine ballots were challenged by the several parties and made the subject of the contest. The one hundred

[1] Reported in 91 N. W. 434.

twenty-nine disputed ballots were divided by the trial court into two general classes: First, those ballots which were disputed for the reason that the voter had not expressed his intention by his manner of marking the ballot; second, ballots upon which either one or both of the election judges had failed to indorse their initials as provided by law. Of the former class there were eighty and of the latter forty-nine. The court found that the contestee received 3,648 votes and the contestant received 3,643 votes, and declared the contestee elected. Contestant appealed to this court.

We do not deem it necessary to review the findings of the trial court with reference to the various ballots included in the first class. With one exception, all of the ballots which in any way affect the result were correctly counted, within the rule adopted in Truelsen v. Hugo, 81 Minn. 73, 83 N. W. 500, and Pennington v. Hare, 60 Minn. 146, 62 N. W. 116. Exhibit 41 was not counted for the reason that the intent of the voter could not be ascertained by the marks upon it. In this we think the trial court was mistaken. In the proper place opposite the name of the contestant the voter had made four irregular light lines, as though attempting to make a cross. Over these lines is a regular cross made by bearing upon the pencil, forming lines that are distinct and heavy enough to clearly distinguish them from the others. This indicates that the voter was not satisfied that he had succeeded in making a cross when tracing the lighter lines, and started in again with a more determined purpose, and succeeded in forming a well-defined regular cross in the proper place. The pencil was evidently in the hands of a nervous or aged person. So viewed, the marks cannot be treated as an attempt at erasure, nor as meaningless, neither as in violation of G. S. 1894, § 141, subd. 7. In this respect this exhibit differs very materially from Exhibit 84, with which it was compared by the trial court. In that instance there was an evident attempt at erasure. Exhibit 41 should have been counted for the contestant, but, inasmuch as this does not change the result, it is not necessary to consider the various ballots which are called into question by the contestee on this appeal.

Section 94, G. S. 1894, provides:

"Two judges of opposite political parties shall, before the voting begins, or as soon thereafter as possible, place their initials on the backs of all the ballots they have, immediately under or opposite the fac simile of the officer under whose direction the ballots were printed, and shall not otherwise mark the same."

Section 95 provides:

"No ballot not officially indorsed, or which has not the initials of two judges of election, in said judges' own handwriting, on the back thereof, shall be placed in the box."

It is the claim of the contestant that the forty-nine ballots minus the initials of the judges were illegal and void, under this statute, and the case of State v. Gay, 59 Minn. 6, 60 N. W. 676, is relied upon as authority. In that case there were before the court ballots which bore the initials of judges of the same political faith, and it was held that they were not invalid, for the reason that such a construction would put it in the power of the judges to disfranchise voters by deception on their part, or by mistake in the appointing power, and therefore, inasmuch as the language was not expressly mandatory, the court would hold it to be merely directory. In that case there was no occasion to pass upon the same question which is now presented. It was sufficient for the purposes of that case to meet the objection presented. However, it is now necessary to go a step further, and consider whether the act is not only directory in reference to the political persuasion of the judges, but also in respect to the necessity of placing their initials upon the ballots. In our judgment, it is purely a matter of statutory construction, and all the provisions of the statute with reference to the preparation, casting, and counting of the ballots must be taken into consideration in order to determine what was the intention of the legislature in using the language with reference to initialing ballots.

Section 104 provides that the judge having charge of the ballots shall tear from each of the blocks a ballot of each kind that is to be voted, having the proper initials thereon, and hand the same to the voter, who shall retire alone to one of the booths, and there prepare the ballot. Section 105, rule 6, provides:

"When an elector has prepared his ballot he shall so fold it, concealing the face thereof and all marks thereon, as to expose only the indorsement and the fac simile signature and initials of the judges at the back thereof."

Section 106 provides that an elector, having prepared his ballot, shall hand the same to the judge of election in charge of the ballot-box, and said judge shall, without opening the same, deposit it in the proper box. From these sections it appears that the ballot is to be indorsed by the judges while it is still in their possession, and when handed to an elector for the purpose of voting each ballot is presumably properly initialed.

The principal statutory declaration relied upon by the contestant which strikes at the invalidity of the ballots is the statement, in section 95, "No [such] ballots shall be placed in the box." If it was the intention of the legislature that no such ballot should be counted, language to that effect would have been used, but the section referred to, when taken in connection with others hereinafter referred to, indicates, in our opinion, that such ballots were not to be considered void. This intention appears not only from the absence of express provisions to that effect, but also from section 130, which deals with the method of canvassing the ballots. The first thing required upon opening the ballot box is to ascertain whether the number of ballots corresponds with the number appearing on the poll list to have been cast in such box. Then follow certain directions with reference to the condition of the ballots which might presumptively raise ground for fraud. They are as follows: Where two or more ballots are found folded together, presenting the appearance of a single ballot, they are to be laid aside until the counting of all the boxes is complete. Again:

"If the ballots in any box are found to exceed in number the number of votes cast in such box, they shall be first examined to ascertain if they are all properly marked with the initials of the judges having charge of the ballots, and in case any are found not so marked they shall be preserved and laid to one side and not counted if the total number still be in excess of the proper number as shown by the poll-lists. If there is still an excess of ballots, they shall be replaced in the box and one of the judges, without

looking, shall draw from the box a number of ballots equal to such excess and the same shall be laid aside and not counted."

The original act of 1891, in respect to unitialed ballots, reads as follows:

"If the ballots in any box are found to exceed in number the number of votes cast in such box, they shall be first examined to ascertain if they are all properly marked with the initials of the judges having charge of the ballots, and in case any are found not so marked they shall be preserved and laid to one side. If there is still an excess of ballots above the registry of voters, they shall be replaced in the box and one of the judges, without looking, shall draw from the box a number of ballots equal to such excess, and the same shall be laid aside." Laws 1891, c. 4, § 67.

Section 133, G. S. 1894, which provides for the return of the uninitialed ballots thus taken out and laid aside, was originally passed in 1891, and re-enacted in 1893.

We shall assume that there is no substantial difference in the effect to be given to the uninitialed ballots in case of an excess of ballots in the box between the acts of 1891 and 1893. The amendment to the effect that such votes shall not be counted, if the total number still be in excess of the proper number as shown by the poll list, adds nothing to section 67 of the Laws of 1891. The clear meaning of the words, "and in case any are found not so marked, they shall be preserved and laid to one side," in connection with the balance of the section, is that such ballots are not to be counted when there is an excess. The language employed in the latter section (130) is more specific and accurate, but is not different in effect. If ballots without such initials should be found in the box, it was competent for the legislature to say that a presumption would arise, from the absence of the signature of the initials, that they had been fraudulently inserted therein. It was equally competent for the legislature to declare that when the number of ballots cast according to the registry corresponded with the number of ballots found in the box such presumption of fraud was overcome, and that they should be treated upon the same basis as those properly initialed; and likewise to enact that, where the excess in the box was equal to the number of uninitialed bal-

lots, presumptively such ballots constituted the excess. It is clearly the intention, as expressed by this section, that uninitialed ballots are not to be counted where the number of ballots found in a box is in excess of the votes cast according to the poll list. But it is just as clearly expressed that in cases where there is no excess of ballots in the box such ballots shall be counted.

Whatever may have been the purpose of the legislature in enacting that uninitialed ballots shall be taken out in order to reduce the excess to the correct number that should be in the box, we are not at present required to determine. We may grant that in respect to the treatment of uninitialed ballots where there is an excess the section is incomplete, yet it is definite and specific as to what shall be done with such ballots where there is no excess. The provision is incomplete because it does not direct what shall be done in a case where there are more uninitialed ballots in the box than the number constituting the excess. It is open to fair criticism, at least, upon the ground that it is unconstitutional in part because in reducing the excess to the proper number the law discriminates against the voter who casts an uninitialed ballot. But because the enactment is incomplete and possibly open to constitutional objection in this one respect, it does not necessarily follow that the whole section is invalid. The object of the provision which requires the judges to place their initials on the ballots is undoubtedly as an additional safeguard to prevent fraud on the part of a voter in placing in the box a ballot other than the one furnished.

In the case of Pennington v. Hare, 60 Minn. 146, 62 N. W. 116, the court had under consideration section 105 of the election law, and in defining the difference between statutes directed to the personal conduct of the elector and laws applicable to elective officers said: "There is a clear distinction between the provisions and prohibitions in election laws which are personal to the elector, which, if he violates them, it is his own fault, and those which apply to elective officers over whose conduct he has no control. In the former case they are to be construed as mandatory, as a general rule, and his vote will be rejected if he intentionally fails to

comply with them, while in the latter case they are to be construed as directory, unless otherwise expressly or by necessary implication so declared by statute.

Rule 6, § 105, aims to regulate the conduct of the elector in folding the ballot, but it is directory only. It is designed in the interest of secrecy. It is proper that the ballot be folded so as to conceal the important thing to be concealed, viz., how the elector voted, but this does not imply that it is the duty of the elector to see that the initials are properly indorsed. Such inference would be out of harmony with the spirit of the law to give effect to the intent of the voter. Considering together the various sections of the election law above referred to, the conclusion is inevitable that it was not the intention of the legislature to throw upon the elector the duty of examining the ballot handed to him by the judge in charge of the box to see that it was properly indorsed, and to be disfranchised if such ballot was not indorsed.

All of the authorities referred to by contestant were based upon statutes which expressly provided that such ballots should not be counted, with one exception. McKay v. Minner, 154 Mo. 608, 55 S. W. 866, held that a statute which provided that no judge shall deposit any ballot upon which the names or initials of the judges, as therein provided, did not appear was mandatory, and that an uninitialed ballot could not be counted, but the law in that state formerly provided expressly that no ballot not so numbered should be counted; and, the court having decided under the former law that such ballots were invalid, it was influenced by that fact in construing the amendment. The court took the position that the legislature had used the new language with the understanding that it carried the interpretation placed upon the former language by the court, viz., that it was mandatory. Whether the reasoning be sound or not in that respect, we cannot accept it as authority upon the effect to be given to the statute here under consideration.

Judgment affirmed.