MUELLER, Appellant, v. HOLTER et al, Respondents.

(194 N. W. 844.)

(File No. 5364.   Opinion filed July 19, 1923.)

1. **Counties—County Seats—Elections—In County Seat Election, Basis for Computation of Required two-thirds of Votes Cast Held to be Highest Number Cast for Any Officer or Proposition, Less Votes Cast by Unqualified Voters; "Votes Cast at Said Election."**

    In determining whether the votes for removal of a county seat were two-thirds the votes cast at the election as required by Const., art. 9, Sec. 3, votes cast by unqualified voters whose names were on the poll list should have been substracted from the total number of votes cast on removal of county seat, and the computation of the two-thirds vote should have been based thereon, subtracting such votes from the total number of names on the poll list and basing such computation on the number remaining as the votes cast at the election was error; since the number of "votes cast" at the election means the highest number of votes cast for candidates for any office or, for or against any measure, and the matter of removal received the highest vote at this election.

2. **Elections—Ballots—Improperly Marked Ballots Cannot Be Counted in Election.**

    Under Rev. Code 1919, Sec. 7277, providing that no ballots shall be counted, except official ballots voted in accordance with section 7264, relating to marking ballots, improperly marked ballots in county seat election cannot be counted and form no part of the votes cast, twothirds of which are required by Const., art. 9, Sec. 3, for removal.

3. **Elections—Findings—Appeal and Error—In an Election Contest Failure to Make Finding Stating Names of Disqualified Voters Not Prejudicial Error.**

    In an election contest, the trial court should have made a finding stating the names of disqualified voters, but failure to do so was not prejudicial error, where from the ruling of the court their names are ascertainable from the record.

4. **Elections—Ballots—Voters Not Disqualified Because of Error of Officers in Stamping Ballots With Wrong Precinct Number.**

    Where in complying with Rev. Code 1919, Secs. 7242, 7270, a county auditor by mistake sent a stamp numbered 38 to an election precinct numbered 37 and the ballots were stamped on the back thereof by the election officers, this should not be held to disqualify the voters, who were not at fault.

Appeal from Circuit Court, Lyman County; Hon. N. D. Burch, Judge.

Election contest by Albert Mueller against Carl J. Holter and others, as County Commissioners of Lyman County. From a judgment for contestees and from an order denying a new trial, contestant appeals. Affirmed.

*M. Q. Sharpe,* of Oacoma, and *French, Orvis & French,* of Yankton, for Appellant.

*J. W. Jackson,* State's Attorney, of Oacoma, *Hannett & Hannett,* of Winner, *Albert Williamson,* of Kennebec, and *Brown & Brown,* of Chamberlain, for Respondents.

(1) To point one of the opinion, Respondent cited: State v. Roper, 46 Neb. 724, 61 N. W. 753; State v. Stakke, 22 S. D. 228; Treat v. DeJean, 22 S. D. 505; State v. Blaisdell (N. D.), 119 N. W. 360; Krakowski v. Waskey, 33 S. D. 562, 134 N. W. 321; Revised Code, Sec. 7277.

(2) and (4) To points two and four, Appellant cited: Dennis v. Caughlin, 29 L. R. A. 731; In re Vote Marks, 17 R. I. 112; Curran v. Clayton, 86 Maine 42; Chamberlain v. Wood, 15 S. D. 216; Ward v. Fletcher, 35 S. D. 98, 153 N. W. 962; Whittam v. Zahorik, 59 N. W. 57; Spurgin v. Thompson (Nebr.), 55 N. W. 279; Martin v. Miles (Nebr.), 65 N. W. 889; Mauck v. Brown (Nebr.), 59 N. W. 313; State ex rel McMillan v. Sadler, 58 Pac. 285; Sweeney v. Hjul, 23 Nev. 409; Van Winkle v. Crabtree, 34 Ore. 462, 55 Pac. 831; Whittam v. Zahork, 91 Ia. 23, 59 N. W. 57; Ward v. Fletcher, 36 S. D. 98, 153 N. W. 962; Woodruff v. Heltibridle, 37 S. D. 35, 156 N. W. 579; Church v. Walker, 10 S. D. 90, 72 N. W. 101, Ward v. Fletcher, 36 S. D. 98, 153 N. W. 962; State ex rel Baxter v. Ellis, 17 L. R. A. 382; Treat v. Morris, 25 S. D. 615, 127 N. W. 154; Perry v. Hackney (N. D.), 90 N. W. 483; Miller v. Schallern, 79 N. W. 865; Lippincott v. Felton (N. J.), 38 Atl. 646; Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321.

Respondent cited: Hannah v. Greene, 76 Pac. 708; Rexroth v. Schein, 69 N. W. 240; Brents v. Smith, 96 N. E. 484; Church v. Walker, 10 S. D. 90, 72 N. W. 101; Church v. Walker, 10 S. D. 450, 74 N. W. 198; McMahon v. Polk, 10 S. D. 296, 73 N. W. 77; Fullerton v. McCaffery, 158 N. W. 506; Bartlett v. McIntire, 108 Me. 161, 70 Atl. 525; Parker v. Hughes, 64 Kan. 216; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Coughlin v. McElroy, 72 Conn. 99, 43 Atl. 854, 77 Am. St. Rep. 301; State v.

Fawcett, 17 Wash. 188, 49 Pac. 346; Parker v. Orr, 41 N. E. 1002; Hunt v. Campbell (Ariz.), 169 Pac. 596; State v. Russell, 51 N. W. 467, 15 L. R. A. 570; Ruthledge v. Crawford, 27 Pac. 779; Bell v. Clawson (Ill.), 103 N. E. 591; Bingham v. Broadwell, 103 N. W. 323; Griffith v. Bonawitz (Neb.), 103 N. W. 327.

GATES, J.   [1]   This is an election contest involving the removal of the county seat of Lyman county from Oacoma to Kennebec. By reason of the facts the provisions of article 9, § 3, of the Constitution apply, so that in order to sustain the removal of the county seat Kennebec must have received "two-thirds of the votes cast at said election." The question in this case is whether it did or did not. The county board and the circuit court held that it did. This appeal is on behalf of Oacoma.

The trial court found:

"IV.  Upon a canvass of the votes cast at said election the canvassing board found that the total number of names on the poll lists of the several voting precincts in the county at said election was 2,756, and that on the question of changing the county seat from Oacoma to Kennebec there were in all 2,733 marked ballots, of which 1,848 were for Kennebec and 885 for Oacoma.  * * *

."VI.  The total number of voters in Lyman county at said election as shown by said poll books was 2,756. The total number of ballots cast on the question of removal of the county seat from Oacoma to Kennebec was 2,733. Of such ballots the court finds that 19 were cast by persons whose names were on the poll list and who were not qualified voters, leaving 2,737 as the total number of legal and qualified voters at said election, of which two-thirds is 1,825."

[2]   This was a manifestly erroneous basis upon which to determine whether Kennebec had received "two-thirds of the votes cast at said election." In any event the trial court should have deducted the 19 votes from 2,733 instead of from 2,756. The number of persons who appeared at the election and voted, as determined by the poll lists, is not determinative of the number of "votes cast at said election." The number of "votes cast at said election" means the highest number of votes cast for the candidates for any office or for and against any measure. Adkins v. Lien, 10 S. D. 436, 73 N. W. 909. At this election the matter

of the county seat removal, as determined by the canvassing board, received the highest vote, viz., 2,733; the vote on the matter of county agent was the next highest, viz., 2,614; and the vote on Governor was the next, viz., 2,555. The trial court properly excluded disqualified voters in determining the number of "votes cast at said election, although, as above stated, it made its subtraction from the wrong minuend, but the trial court incorrectly counted ballots which were illegal for some other reason in determining the number of votes cast. Upon its basis of determining the number of votes cast by counting the number of qualified voters as appeared from the poll lists it logically followed, as held in Treat v. Morris, 25 S. D. 615, 127 N. W. 554, and Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321, that improperly marked ballots should be counted, but the basis was wrong as applied to this case. In both of those cases the result was to be determined by ascertaining whether "a majority of the voters" of the town had voted for the measure. Manifestly a person is no less a voter of the town because his ballot was blank or defectively marked. The criterion here is the number "of votes cast at said election," not the number of voters. So that Treat v. Morris and Briggs v. Ghrist have no application.

Our statute, section 7277, Rev. Code 1919, which differs from the statute in force when those decisions were rendered, provides:

"None but official ballots, voted in accordance with section 7264 shall be counted."

Section 7264 is the section which gives directions as to the marking of the ballots. So that if ballots are not marked in accordance with that section they cannot be counted. This means that they cannot be counted for any purpose. They are illegal ballots. If they cannot be counted they surely form no part of the total number "of the votes at said election."

[3] Counsel for appellant assign as error the refusal of the trial court to make a finding definitely stating the names of the 19 alleged voters whose ballots were not counted because they were disqualified. It would have eased the work of appellant's counsel and of this court if this had been done, and we think it should have been done, but we do not think such failure is prejudicial error because from the rulings of the court as disclosed by the record the names of such disqualified voters are ascertainable.

[4]   Counsel for appellant assign as error the failure of the trial court to reject the whole vote of Lower Brule precinct No. 37 (40 votes), for that the official stamp on the back of each ballot described such ballot as belonging to precinct No. 38.   Rev. Code 1919, §§ 7242, 7270.   This was clearly the error of the county auditor in sending the wrong stamp to the election officers of the precinct and should not be held to disqualify the votes of the 40 voters of that precinct through no fault of their own. Olson v. City of Lemmon, 33 S. D. 380, 146 N. W. 592.

Having disposed of the matter thus far, the consideration of the other assigned errors becomes immaterial, because whichever way they or any of them are decided will not affect the result. Deduct from the total vote, 2,733, the votes of the 19 disqualified voters, and there remain 2,714.   Appellant objects to the striking out of 3 of these which were cast for Oacoma (App. Brief, p. 83).   If we should decide that question favorably to him, the total vote cast should be 2,717, instead of 2,714.   The trial court in its rulings deducted 15 illegal ballots, of which appellant does not complain (Resp. Brief, pp. 27, 28, 32).   Deducting these from 2,717 leaves 2,702.

Appellant's other assignments of error affect 62 ballots, including the votes of 7 Indians claimed by appellant not to be qualified electors (App. Brief, p. 71).   If we should deduct all of these from Kennebec's total of 1,830, the result would be 1,768; but if we did that, we would also be obliged to deduct the same number from the 2,702 total votes, which would leave 2,640, because if those 62 votes were illegal they should not be counted as votes cast at the election.

Inasmuch as 1,768 is more than two-thirds of 2,640, the consideration of said 62 ballots becomes unnecessary.

The judgment and order denying new trial are affirmed.

SHERWOOD and DILLON, JJ., not sitting.

Note.—Reported in 194 N. W. 844.   See, Headnote (1), American Key-Numbered Digest, Counties, Key-No. 35(2), 15 C. J. Sec. 62; (2) Elections, Key-No. 35(2), 20 C. J. Sec. 184; (3) Elections, Key-No. 305(8), 20 C. J. Sec. 389; (4) Elections, Key-No. 186(1), 20 C. J. Sec. 222.

Authorities discussing the question of irregularities in marking ballots are collated in note in 47 L. R. A. 808.