## CHARLES E. JOHNSON v. FRANK TRNKA.

154 N. W. (2d) 185.

August 25, 1967—No. 40,805.

*Dablow & Johnson,* for appellant.
*Parker & Olsen* and *Robert S. Parker,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of the district court growing out of an election contest by which it was determined that Charles E. Johnson

was elected auditor of Isanti County by a margin of 2 votes. The issue presented must be resolved by interpretation of Minn. St. 204.20,[1] which relates to election procedures to be followed with reference to ballots not properly marked by the judges under circumstances where the ballots cast are in excess of the number found in the election register.

In the general election held in Isanti County on November 8, 1966,

---

[1] Minn. St. 204.20 provides: "Subdivision 1. The judges shall remove all the ballots from the box, and without considering how the ballots are marked they shall ascertain that each ballot is single, and count them to determine whether the number of ballots corresponds with the number that the election register or registration file shows were cast.

"Subd. 2. If two or more ballots are found so folded together as to appear like a single ballot, the judges shall lay them aside until all of the ballots in the box have been counted, and if it is evident from the number that the election register or registration file shows were cast that the ballots folded together were cast by one voter, the judges shall preserve but not count them. If there is an excess of ballots in one box, the judges shall examine all the ballots in the box to ascertain that all are properly marked with the initials of the judges, and if any are not so marked, they shall preserve but not count them. If there is still an excess of properly marked ballots, the judges shall replace them in the box, and one judge, without looking, shall withdraw from the box a number of ballots equal to the excessive number, and the withdrawn ballots shall be preserved but not counted.

"Subd. 3. If the judges find ballots in a ballot box that are different from the kind properly belonging therein, they shall lay the different ballots aside. If the number of ballots in any box equals or exceeds the number that the election register or registration file shows were cast, then ballots proper to have been placed therein, but found in another box, may not be counted. But if the number is less than that shown by the election registers or registration file, and ballots properly belonging in that box are found in another box, they shall be counted the same as those in the proper box, but only to the extent of the deficiency and selected by lot when necessary.

"Subd. 4. When the number of ballots as finally counted agrees with the number that the election register or registration file shows were cast, those ballots not counted shall be attached to a certificate made by the judges, stating why the ballots were not counted, and the certificate and uncounted ballots shall be sealed in a separate envelope and returned with the other returns to the officer from whom they were received."

Charles E. Johnson opposed Frank Trnka, the incumbent, for the office of county auditor. The Isanti County Canvassing Board declared Trnka to be the winner by a vote of 2,543 to 2,539.

In the contest which followed, the court ordered an inspection of the ballots, as a result of which certain errors were found. We think that the trial court correctly disposed of all of the issues except those relating to the questioned ballots which were marked exhibits A17, A18, A19, A20, B2, and B3. These ballots were not properly initialed by the election judges, as required by Minn. St. 204.05, subd. 1, which provides:

"Before the voting begins, or as soon thereafter as possible, two judges shall place their initials on the backs of all the ballots they have, directly under or opposite the facsimile of the official signature, and they may not otherwise mark the ballots."

The foregoing is a common statutory requirement and is intended to assure the voter that he is given an authentic ballot, to enable the public to identify the actual ballot cast in the event of an election contest, and to prevent fraud. 29 C. J. S., Elections, § 172; Morandi v. Heiman, 23 Ill. (2d) 365, 178 N. E. (2d) 314; State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676; Truelsen v. Hugo, 87 Minn. 139, 91 N. W. 434; Moyer v. Van De Vanter, 12 Wash. 377, 41 P. (2d) 60, 29 L. R. A. 670; 6 Dunnell, Dig. (3 ed.) § 2919. These purposes must be considered in light of the numerous decisions of this court which express the well-established policy of giving effect to the votes of legal voters regardless of irregularities in the election. No person should be deprived of his right to vote because of the neglect or carelessness of election officials unless that conduct has been carried to such an extent as to affect the true outcome of the election and put the results in doubt. Clayton v. Prince, 129 Minn. 118, 151 N. W. 911; Taylor v. Taylor, 10 Minn. 81 (107); McEwen v. Prince, 125 Minn. 417, 147 N. W. 275; 6 Dunnell, Dig. (3 ed.) § 2960. We said in In re Contest of Election of Vetsch, 245 Minn. 229, 238, 71 N. W. (2d) 652, 658:

"* * * [A]fter an election is over, statutory regulations are usually construed to be directory rather than mandatory unless the departure from the statutes casts uncertainty upon the result."

With these preliminary observations, we may focus upon the provisions of § 204.20, which specifically directs the procedure to be followed as applied to the facts before us. It appears that in the Township of Cambridge 505 voters were registered in the election register. 507 ballots were found in the box. Six of the ballots were not initialed by the election judges. Of the 6 uninitialed ballots, 4 were for Johnson and 2 were for Trnka. The court held that these were properly counted and resolved the issue of the excess ballots by withdrawing at random 2 ballots from the box containing 507 ballots, thus reducing the number of ballots to the correct total as shown by the register. This left contestant Johnson with a majority of 2 votes.

It should be kept in mind that § 204.20 expressly provides what should be done when an excess of ballots is found in an election box. The liberal principles which generally hold that neglect and carelessness of election officials should not deprive a person of his right to vote must yield to the express provisions of this statute as it applies to the disposition of excess ballots. Section 204.20, subd. 1, requires that the first thing the judges shall do in the counting process is to ascertain that each ballot is single, "and count them to determine whether the number of ballots corresponds with the number that the election register or registration file shows were cast." The outcome of an election should rest upon ballots received according to law and should not be determined by illegal votes. Obviously, 2 of the votes which were cast cannot be said to be legal. Under the circumstances, it was the duty of the election judges, as required by § 204.20, subd. 2, to examine the ballots in the box "to ascertain that all are properly marked with the initials of the judges, and if any are not so marked, they shall preserve but not count them." As we understand the language of the statute, a "properly marked ballot" is one "marked with the initials of the judges." The statute specifically provides that uninitialed ballots should not be counted.

Apparently, the trial court felt that, since there was no evidence of actual fraud here, a result should be reached in some manner and therefore employed the method provided for in the last part of § 204.20,

subd. 2, by withdrawing 2 ballots from the total of the ballots cast. That part of the statute provides:

"* * * If there is still an excess of properly marked ballots, the judges shall replace them in the box, and one judge, without looking, shall withdraw from the box a number of ballots equal to the excessive number, and the withdrawn ballots shall be preserved but not counted."

We are of the view that the method used in attempting to determine the outcome was not correct. The above provision of the statute applies to the conduct of election judges only where, after removing the uninitialed ballots, it is found that there is "still an excess of properly market ballots * * *." Here, of course, there was no excess of properly marked ballots. If the uninitialed ballots were laid aside and not counted, as the statute requires, the total number of ballots would be within the limit of registered voters as shown by the election register or registration file.

This interpretation is consonant with views expressed in Truelsen v. Hugo, *supra,* where the court discussed the predecessor statute which contains practically the same provisions.[2]

Since the 6 uninitialed ballots should not have been counted, it would appear that the election resulted in a tie vote. Accordingly, the judgment is reversed and remanded for further proceedings provided by statute.

Reversed and remanded.

### Upon Appeal From Clerk's Taxation of Costs.

On October 27, 1967, the following opinion was filed:

### Per Curiam.

Because of the nature of this appeal, which involves meritorious claims of both contestant and contestee following an election contest, this court exercises its discretion (Minn. St. 607.01; Oehler v. Falstrom, 273 Minn. 453, 461, 142 N. W. [2d] 581, 587) and determines that the costs and disbursements incurred shall be shared equally by the parties.

---

[2] The only significant change in Minn. St. 204.20, subd. 2, is that the phrase "properly marked ballots" has been added in the last sentence relating to disposition of uninitialed ballots.