**Todd CHRISTENSEN, Petitioner and Appellant,**

v.

**John DEVANY, Martha Davis, Loren Carlson, acting in their capacity as members of the Recount Board for County Commissioners (Clay), and Betty Lynn, Appellees.**

**No. 18248.**

Supreme Court of South Dakota.

Submitted on Briefs April 20, 1993.

Decided May 12, 1993.

Patrick Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for petitioner and appellant.

John P. Billings of Bogue, Weeks, Rusch and Billings, Vermillion, for appellees.

SABERS, Justice.

In the November 3, 1992 general election for the position of Clay County Commissioner, Todd Christensen (Christensen) received 1,434 votes. Betty Lynn (Lynn), his nearest competitor, received 1,431 votes. Lynn requested a recount.[1]

The Clay County Recount Board (Board) convened on November 23, 1992 and on December 1, 1992 determined that the 212 ballots cast in the Star/Bethel Township, which had not been stamped with the official stamp as defined by SDCL 12–16–30 [2], were void under SDCL 12–18–12 [3], SDCL

---

1. County Commissioner candidates Paul M. Hasse and Ralph H. Westergaard received 2,051 votes and 1,761 votes respectively. The election of Hasse and Westergaard to two of the three available County Commission seats is not in dispute.

2. SDCL 12–16–30 provides:
   Before opening the polls the county auditor or officer charged with the conduct of a local election shall cause to be delivered to a judge of election of each precinct within the county, for use at the polling place of the precinct, a rubber or other stamp which shall contain the words "official ballots," the name or number of the election precinct, the name of the county, and the date of the election. Such stamp and other supplies for the election shall be delivered and receipted for by the various officers in the same manner and at the same time as provided in this chapter for the delivery and receipt of packages of ballots.

3. SDCL 12–18–12 provides:
   Before delivering a ballot to any voter the judge having charge of the ballots shall stamp

12–20–6 [4] and ARSD 5:02:16:10.[5] Instead of the official stamp, all ballots cast were stamped with a second stamp which stated "Gen Nov 03 1992." Both stamps were provided to the election officials at the same time and the wrong stamp was inadvertently used to stamp all ballots. Of these 212 ballots, fifty were cast for Christensen and ten were cast for Lynn. As a result of the recount, which determined all 212 ballots void, Lynn was declared the winner by a margin of thirty-seven votes.

Christensen filed a Petition for Alternative Writ of Certiorari. The trial court denied the Writ of Certiorari, affirming the Board. Christensen appeals. We reverse.

The issue is whether, in this instance, the failure of the election officials to stamp the ballots with the correct official stamp renders the ballots void under SDCL 12–20–6.

> This court's scope of review in examining ballots is found in SDCL 12–21–57 which provides in part that "the court may review completely all of the proceedings ... relative to such recount ... and correct any errors made in the determination of questions as to validity of ballots, and in computation of returns, and any errors which may be manifest from such certifications." Accordingly, our scope of review is de novo.

*Duffy v. Mortenson*, 497 N.W.2d 437, 438 (S.D.1993) (citing *Thorsness v. Daschle*, 285 N.W.2d 590, 592 (S.D.1979)).

"It has long been the rule in this state that it is the duty of courts and election judges to determine and carry out the intent of the elector when satisfied that *the elector has endeavored to express such intent in the manner prescribed by law*

[.]" *Id.* (emphasis added) (citation omitted). "It is not the policy of the law to disenfranchise voters because of an election official's mistakes, negligence, or misconduct." *Abbott v. Hunhoff*, 491 N.W.2d 450, 452 (S.D. 1992) (citations omitted).

Under the "plain language" of SDCL 12–20–6, it appears the ballots are void and should not be counted. Such a holding would, however, place form over substance, *see Olson v. City of Lemmon*, 33 S.D. 380, 382, 146 N.W. 592, 593 (1914), and disenfranchise every voter in the Star/Bethel Township. In analyzing this case, it is crucial that this court look beyond the plain language of these statutes and consider the legislative intent of SDCL 12–18–12 and 12–20–6. In *Johnson v. Trnka*, the Minnesota Supreme Court looked at the purposes of a statute similar to SDCL 12–18–12 and stated:

> [Minn.St. 204.05, subd. 1] is a common statutory requirement and is intended to assure the voter that he is given an authentic ballot, to enable the public to identify the actual ballot cast in the event of an election contest, and to prevent fraud. These purposes must be considered in light of the numerous decisions of this court which express the well-established policy of giving effect to the votes of legal voters regardless of irregularities in the election. No person should be deprived of his right to vote because of the neglect or carelessness of election officials unless that conduct has been carried to such an extent as to affect the true outcome of the election and put the results in doubt.

277 Minn. 468, 154 N.W.2d 185, 187 (1967) (citations omitted).[6]

---

on its back and near the top of the ballot the official stamp provided for that purpose.

**4.** SDCL 12–20–6 provides:

> In the canvass of the vote any ballot which is not endorsed as provided in § 12–18–12 by the official stamp shall be void and shall not be counted.

**5.** ARSD 5:02:16:10 provides:

> In the canvass of the official vote, any ballot not covered by § 5:02:16:07, 5:02:16:08 or 5:02:16:09.01, which is not endorsed by the official stamp shall be void and shall not be count-

ed. All such ballots shall be endorsed "unstamped ballot."

**6.** The purpose of the requirement that all ballots be stamped with the official stamp "is said to be twofold: First, to give the voter an official ballot which he may surely know to be such, and second, to enable the public to identify the actual ballot cast in the event of an election contest; but an additional purpose has been advanced, namely, to prevent fraud. The statutes should be strictly enforced to accomplish the purpose intended, but liberally construed in order to ascertain and effectuate the will of the voters." 29 C.J.S. *Elections* § 172 (1965).

The failure on the part of election officials to correctly stamp the ballots did not "affect the true outcome of the election and put the results in doubt[,]" *id.*, or in the words of this court, "cast substantial doubt upon the validity of the outcome of the election." *Larson v. Locken*, 262 N.W.2d 752, 755 (S.D.1978). Despite the fact that the ballots were not stamped with the correct official stamp, the legislative purposes were not undermined. It is undisputed that 212 authentic ballots were cast in the Township and that 50 of these ballots were cast for Christensen and 10 for Lynn. Fraud or bad faith on the part of the election officials has not been alleged. Nor can it be argued, as in *Larson*, that this error provided the opportunity to commit fraud. In fact, to declare these ballots void could bring about the very results these statutes were intended to prevent.

To hold that all prescribed duties of election officers are mandatory, in the sense that their nonperformance shall vitiate the election, is to ingraft upon the law the very powers for mischief it was intended to prevent. If the mistake or inadvertence of the officer shall be fatal to the election, then his intentional wrong may so impress the ballot as to accomplish the defeat of a particular candidate or the disfranchisement of a party.

*Jones v. State ex rel. Wilson*, 153 Ind. 440, 55 N.E. 229, 232 (1899). Additionally, this situation does not enable someone to identify another's vote. All the ballots were stamped but simply with the wrong stamp.

In *Mueller v. Holter*, 46 S.D. 535, 194 N.W. 844 (1923), all ballots in the Lower Brule precinct No. 37 (40 votes) were erroneously stamped on the back with the official stamp for precinct No. 38. This court, in affirming the trial court's refusal to reject the whole vote of Lower Brule precinct No. 37, stated that "[t]his was clearly the error of the county auditor in sending the wrong stamp to the election officers of the precinct and should not be held to dis-

qualify the votes of the 40 voters of that precinct through no fault of their own." *Id.*, 194 N.W. at 846 (citing *Olson*, 33 S.D. 380, 146 N.W. 592). Here, as in *Mueller*, because of an error on the part of election officials, all 212 ballots were stamped with the wrong stamp. This occurred through no fault on the part of the voters. "The irregularity here under consideration was due wholly to the [election] official, whose duty it was to procure the ballots, and was in no manner due to any act of any individual elector." *Olson*, 33 S.D. at 382, 146 N.W. at 593.

Under these facts, the unintentional use of the wrong stamp, which was solely under the control of the election officials, to stamp all of the ballots "was a mere formal irregularity, and ... no substantial or essential requirement of the law was thereby violated." *Id.* Because it is not the policy of this state to disenfranchise a voter because of an election official's mistake or negligence, but rather, "to determine and carry out the intent of the elector when satisfied that the elector has endeavored to express such intent in the manner prescribed by law," *Mortenson*, 497 N.W.2d at 438 (citation omitted), we hold that these ballots are valid and should be counted.[7]

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.

7. We limit this holding to the facts of this case and do not intend to detract from any of the cases where this court found the statute was intended to cover the specific irregularities.