1998 SD 90

**TAYLOR PROPERTIES, INC.,**
Plaintiff and Appellant,

v.

**UNION COUNTY, South Dakota,**
Defendant and Appellee.

No. 20157.

Supreme Court of South Dakota.

Argued Jan. 15, 1998.

Decided Aug. 12, 1998.

Mark V. Meierhenry and Robin Jacobson Houwman of Danforth, Meierhenry & Meierhenry, Sioux Falls, for plaintiff and appellant.

Thomas J. Welk and Roger A. Sudbeck of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Taylor Properties, Inc. (Taylor) alleged that Union County (County) violated its due process rights and took its property without just compensation in allowing a referendum vote which denied Taylor a change in the zoning of its property. The trial court granted summary judgment to County and Taylor appeals. We affirm.

## FACTS

[¶ 2.] Taylor purchased approximately 13.61 acres of land from Maynard Larson on March 18, 1994, for $125,000. Taylor's purchase from Larson was made subject to the ability of Taylor to secure a change in zoning. At the time of purchase, the land in question was zoned "agricultural," pursuant to County's zoning and subdivision ordinances, but Taylor intended to attempt to rezone the property as residential and to build condominiums on the site. Even before any zoning change was made, Taylor hired an architect to make plans for the condominium and began clearing the land and making improvements.

[¶ 3.] A special county commission meeting was held in May of 1994 to address the rezoning of the land in question. Several residents of the area attended the meeting and voiced their concerns about the proposed development. Roger Boldenow, chairman of the Union County Board of Commissioners, stated that most of the concerns were expressed by residents from Riverland Estates, a development of residential homes, which borders Taylor's property. Boldenow felt the residents' concerns related to Taylor's plans for "the disposal of sewage, [potable] water, access, [and] adequacy of water for fire protection."

[¶ 4.] During 1994, Taylor contacted several governmental entities to get approval for the project. Taylor received approval of his plan for the septic system of the development based on his assurance that the wastewater would be treated. Also, Taylor secured a water permit for the project. The Deputy Fire Marshall of South Dakota indicated that changes would have to be made to the tank storage system or an increased number of fire hydrants would have to be included to meet fire protection requirements. The Union County Highway Superintendent informed Taylor about changes that would need to be made to the roads leading into the proposed project.

[¶ 5.] On November 16, 1994, Taylor submitted a petition requesting a zoning change of the property from agricultural to residential. On December 6, 1994, the Union County Planning and Zoning Board recommended the requested rezoning. The first reading of the zoning amendment was made at a meeting on December 20, 1994. The second reading occurred at a meeting on December 30, 1994. Finally, a notice of the adoption of the amendment was published on January 5, 1995, with an effective date of January 25, 1995.

[¶ 6.] On January 24, 1995, the Union County Auditor received a petition referring the amendment to the zoning ordinances to a public vote. In response, Taylor filed an application for a writ of mandamus and a complaint for damages in the alternative. On March 15, 1995, the trial court denied the writ, allowing the referendum vote on March 21. The ordinance that would have allowed Taylor's development to proceed failed by a vote of 425 to 407. Only 832(12%) of the 6,916 registered voters in Union County voted on the referendum issue.

[¶ 7.] As a result of the referendum, Taylor filed an amended complaint in August of 1995, alleging an unconstitutional taking without just compensation. County filed a motion for summary judgment, which was granted on May 21, 1997.

[¶ 8.] Taylor appeals, raising the following issues:

1. Whether the trial court erred in finding that County did not violate Taylor's due process rights.

2. Whether the South Dakota zoning ordinances violate the South Dakota Constitution.

## STANDARD OF REVIEW

[¶ 9.] "Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460, 462 (S.D.1991) (quoting *Breen v. Dakota Gear & Joint Co.,* 433 N.W.2d 221, 223 (S.D.1988)). "The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party." *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 164 (S.D.1987) (citations omitted).

'Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.' *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 836–37 (S.D.1990) (quoting *Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989)).

[¶ 10.] "This court will uphold legislative enactments unless they are clearly and unmistakably unconstitutional." *State v. Baker,* 440 N.W.2d 284, 287 (S.D.1989) (citations omitted). "All presumptions are in favor of the constitutionality of a statute and continue so until the contrary is shown beyond a reasonable doubt." *Id.* (citing *State v. Bonrud,* 393 N.W.2d 785, 788 (S.D.1986)) (other citations omitted). "Statutory interpretation involves questions of law for the circuit court and, as such, our review of such matters is de novo." *In re Estate of Gossman,* 1996 SD 124, ¶ 6, 555 N.W.2d 102, 104 (citing *Sioux Valley Hosp. Ass'n. v. State,* 519 N.W.2d 334, 335 (S.D.1994); *King v. John Hancock Mut. Life Ins. Co.,* 500 N.W.2d 619, 621 (S.D. 1993)).

### DECISION

[¶ 11.] **1. Taylor's due process rights.**

[¶ 12.] Taylor first argues that South Dakota law does not allow a referendum vote on rezoning ordinances and, therefore, Taylor's due process rights have been violated. Taylor contends there is an inherent conflict between any interpretation that SDCL 11–2–22 allows a referendum vote on rezoning issues and SDCL 7–18A–15.1, which states that there can be no referendum on matters which are purely administrative. Thus, Taylor contends that rezoning is merely an administrative matter.

[¶ 13.] SDCL 11–2–30 outlines the procedure followed after a petition for rezoning has been filed:

The board of county commissioners shall thereafter by resolution or ordinance, as appropriate, either adopt or reject such amendment, supplement, change, modification or repeal, and if it is adopted by the board of county commissioners, a summary

of the same shall be prepared by the county planning commission, reviewed by the state's attorney, and published once in the official newspaper in such county and take effect on the twentieth day after its publication. The provisions of § 11–2–22 shall be applicable hereto.

In turn, SDCL 11–2–22 provides:

The county comprehensive plan *or any adjunct thereto* may be referred to a vote of the qualified voters of the county pursuant to §§ 7–18A–15 to 7–18A–24, inclusive. The effective date of a county comprehensive plan or adjunct thereto on which a referendum is to be held shall be suspended by the filing of a referendum petition until the referendum process is completed. However, when a comprehensive plan or adjunct thereto is referred to a referendum vote, no land uses that are inconsistent with the county comprehensive plan or adjunct thereto may be established between the time of adoption of the plan by the county commission, as provided in § 11–2–20, and the time of the referendum vote. (Emphasis added.)

SDCL 7–18A–15.1 provides a statutory distinction between legislative and administrative acts and which may be referred to a public vote:

Any legislative decision of a board of county commissioners is subject to the referendum process. A legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.

No administrative decision of a governing body is subject to the referendum process, unless specifically authorized by this code. An administrative decision is one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature. Supervision of a program is an administrative decision. Hiring, disciplining and setting the salaries of employees are administrative decisions.

[¶ 14.] This Court must look at the wording of the statutes in question and interpret

them according to their plain meaning. To that end, we have stated:

> 'The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.'

*Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (quoting *U.S. West Communications, Inc. v. Public Utilities Comm'n*, 505 N.W.2d 115, 122–23 (S.D.1993)).

[¶ 15.] Taylor contends a comprehensive reading of these statutes indicates that the comprehensive plan is subject to a referendum, but the rezoning of an already approved plan is merely an administrative function. However, Taylor's construction affords no meaning to the words "or any adjunct" to the comprehensive plan as contained in SDCL 11–2–22. If a rezoning ordinance is not an adjunct to a comprehensive plan, then what is? In a case like this, where the meaning of two statutes is arguably in conflict, "it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.' " *Whalen v. Whalen*, 490 N.W.2d 276, 280 (S.D.1992) (citing *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 184 (S.D.1986); *Karlen v. Janklow*, 339 N.W.2d 322, 323 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982)).

[¶ 16.] Taylor also contends that "[i]f the legislature had intended to allow referendums for rezoning issues, it could have used the word 'amendment' in addition to, or in place of 'adjunct.' " Taylor maintains this position is based, in part, on a comparison of the definitions of the two terms.

[¶ 17.] However, we do not see a distinction supportive of Taylor's point of view in examining the difference in meaning between the word "adjunct," as used in the statute, and the word "amendment." Adjunct has been defined as "[s]omething added to another, but in a subordinate, auxiliary, or dependent position." Black's Law Dictionary 42 (6th Ed.1990). The definition of amendment includes to change "by modification, deletion, or addition." *Id.* at 81. Thus, both "adjunct" and "amendment" include the idea of adding something to another. In this case, that would be the additional amending ordinance added to the comprehensive plan. Furthermore, Taylor has not advanced any example of what "adjunct" means if it does not include a rezoning ordinance. Once again, we note that we are called upon to give all parts of legislative enactments full effect. *See Whalen*, 490 N.W.2d at 280. Taylor's interpretation would violate that important tenet of statutory construction. *See Cordell v. Codington County*, 526 N.W.2d 115, 117 (S.D.1994) (stating that "[z]oning regulations are generally interpreted according to the rules of statutory construction.") (citing 83 Am.Jur.2d *Zoning and Planning* § 698 (1992)).

[¶ 18.] Implicit in Taylor's argument that SDCL 7–18A–15.1 cannot be reconciled with an interpretation that SDCL 11–2–22 allows referendums on rezoning issues is the fact that rezoning is an administrative matter. However, courts are split on the question of whether rezoning is an administrative matter. *See* J.R. Kemper, Annotation, *Adoption of Zoning Ordinance or Amendment Thereto as Subject of Referendum*, 72 A.L.R.3d 1030 (collecting cases). Usually, "[t]he application of initiative and referendum to zoning ordinances depends on the law of the state in question." 8A E. McQuillin, The Law of Municipal Corporations § 25.246, at 274 (3d Ed. 1991). Thus, we return to SDCL 7–18A–15.1 and its definitions for legislative and administrative decisions: "An administrative decision is one that merely puts into execution a plan already adopted by the

governing body itself or by the Legislature." *Id.* Whereas, "[a] legislative decision is one that enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers." *Id.* In making these distinctions, "this Court will apply a liberal rule of construction permitting rather than preventing, citizens from exercising their powers of referendum." *Wang v. Patterson,* 469 N.W.2d 577, 580 (S.D.1991) (holding city resolutions of condemnation were legislative in nature). We find that a rezoning amendment is not merely the carrying out of a previously adopted plan, but is the creation of a new rule. Therefore, we agree with the majority of states that have addressed the question and find a rezoning decision fits more properly under the definition of a legislative act. *See* 6 Patrick J. Rohan, Zoning and Land Use Controls, § 39.02[1]-[2] (1997) (stating the majority of jurisdictions characterize rezonings as well as refusals to rezone property as legislative acts and collecting cases from minority and majority jurisdictions). In sum, we hold that South Dakota law allows for a referendum vote on rezoning ordinances such that Taylor's due process rights have not been violated.

### [¶ 19.] 2. Constitutionality of South Dakota Zoning Laws

■ [¶ 20.] Taylor's second main argument is that "the use of a referendum is an inherently arbitrary and capricious method of issuing zoning changes because referendums allow for arbitrary and unreasonable decisions based on irrational reasons." To support its position, Taylor seeks a favorable comparison between the current case and *Cary v. City of Rapid City,* 1997 SD 18, 559 N.W.2d 891. In *Cary,* we held SDCL 11–4–5 was a protest statute that was unconstitutional. *Id.* at ¶ 24, 559 N.W.2d at 896. The statute in question allowed forty percent of neighboring property owners to file a written protest that would completely bar the rezoning of property. We noted that, because of the lack of legislative bypass, "SDCL 11–4–5

allow[ed] a potentially small number of neighboring property owners to make the ultimate determination of the public's best interest." *Id.* at ¶ 23, 559 N.W.2d at 895.

[¶ 21.] However, the present case does not involve the whim of "a minority of neighboring property owners" like that present in *Cary. Id.* at ¶ 23, 559 N.W.2d at 896. This case involves the general public's[1] right to direct political participation. Through the referendum, the public is allowed to make the ultimate determination of its best interest.

[¶ 22.] The United States Supreme Court, in *Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), was presented with a case so similar to Taylor's that the Court's description of the facts in *Eastlake* could also apply to the case at hand:

> The situation presented in this case is not one of a zoning action denigrating the use or depreciating the value of land; instead, it involves an effort to *change* a reasonable zoning restriction. No existing rights are *being* impaired; new use rights are being sought.... Thus, this case involves an owner's seeking approval of a new use free from the restrictions attached to the land when it was acquired.

*Id.* 426 U.S. at 679 n. 13, 96 S.Ct. at 2365 n. 13, 49 L.Ed.2d at 141 n. 13, (emphasis in original).

[¶ 23.] In *Eastlake,* the United States Supreme Court examined and found wanting many of the arguments that Taylor has advanced to overturn the referendum statutes at issue here. The precise question in *Eastlake* was "whether a city charter provision requiring proposed land use changes to be ratified by 55% of the votes cast violates the due process rights of a landowner who applies for a zoning change." *Id.,* 426 U.S. at 670, 96 S.Ct. at 2360, 49 L.Ed.2d at 135–36. The Ohio Supreme Court had held that the enactment of zoning and rezoning provisions was a legislative function,[2] and the referendum in question permitted the police power

---

1. In this case, "the general public" is embodied by the qualified voters of Union County.

2. Ohio was among the majority of states finding zoning and rezoning provisions to be legislative in nature, not administrative. See section 1, supra.

of the state to be exercised arbitrarily and capriciously, without standards. *Forest City Enterprises, Inc. v. City of Eastlake,* 41 Ohio St.2d 187, 324 N.E.2d 740, 747 (1975). The Ohio Supreme Court concluded that a referendum provision without any guiding standards was an unlawful delegation of legislative power. *Id.* 324 N.E.2d at 746. In holding otherwise, the United States Supreme Court stated the following:

> A referendum cannot, however, be characterized as a delegation of power. Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create. In establishing legislative bodies, the people can reserve to themselves power to deal with matters which might otherwise be assigned to the legislature.
>
> The reservation of such power is the basis for the town meeting, a tradition which continues to this day in some States as both a practical and symbolic part of our democratic processes. The referendum, similarly, is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies.

*Eastlake,* 426 U.S. at 672–73, 96 S.Ct. at 2361–62, 49 L.Ed.2d at 137 (citations omitted).

[¶ 24.] As was the case for the state of Ohio, South Dakota has reserved the referendum power to the people. S.D.Const.Art. III, § 1. This sacred right is also specifically extended to the issue of county comprehensive plans and adjuncts thereto by SDCL 11-2-22. Another court in upholding the constitutionality of a referendum which voided a city council's decision to rezone land addressed well the arguments that Taylor makes against allowing referendums on zoning changes:

> A referendum ... is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters—an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest. See *Spaulding v. Blair,* 403 F.2d 862 (4th Cir.

1968). This question lay at the heart of the proposition put to the voters. That some voters individually may have failed to meet their responsibilities as legislators to vote wisely and unselfishly cannot alter the result.

*Southern Alameda Spanish Speaking Org. v. City of Union City, Cal.,* 424 F.2d 291, 294 (9th Cir.1970). We agree with the Ninth Circuit as well as the holding of *Eastlake* that "[a]s a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance." 426 U.S. at 679, 96 S.Ct. at 2364–65, 49 L.Ed.2d at 141. Nor does it violate the provisions of the South Dakota Constitution.

[¶ 25.] We find the remainder of Taylor's arguments without merit.

[¶ 26.] Affirmed.

[¶ 27.] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.

