1999 SD 17

**Larry BECKER, Plaintiff and Appellant,**

v.

**Julie PFEIFER, Defendant and Appellee.**

**No. 20633.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 7, 1999.

Decided Feb. 4, 1999.

Kennith L. Gosch of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, for plaintiff and appellant.

James A. Wyly of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Larry Becker appeals from an order quashing and dismissing his application for writ of certiorari to review a recount of a municipal election. He also appeals from the judgment determining the election was valid and declaring Julie Pfeifer the winner in an election contest. We affirm the order and the judgment of the trial court.

## FACTS[1]

[¶ 2.] Becker and Pfeifer were candidates for the office of city commissioner of the City of Aberdeen in its general election held June 2, 1998. Six candidates vied for this position and voters were instructed to cast their votes for only one candidate. Ballots determined to be marked for more than one candidate were not counted as a vote for any of the candidates. Election returns showed Becker the winner by two votes.

[¶ 3.] Pfeifer requested a recount pursuant to SDCL 9–13–27.3.[2] A recount board was established according to this statute. It consisted of three persons, a representative of each candidate and an additional person, appointed by the finance officer, who was mutually agreeable to the two candidates.

[¶ 4.] The votes were recounted and ballots on which the voter had blackened the oval next to Pfeifer's name and placed an "X" in the oval beside another candidate's name were counted as a vote for Pfeifer. Another ballot, that showed an "X" in the oval beside Pfeifer's name and a filled oval and circle around Becker's name, was not counted as a vote for Becker. None of these nine overvoted ballots had originally been counted as a vote for any of the candidates. Four ballots originally counted for Pfeifer were disputed by Becker as having identifying marks; these ballots were counted by the recount board as votes for Pfeifer. The recount gained two votes for Pfeifer with the result being that Pfeifer and Becker each had an equal number of votes. Lots were drawn to determine the winner. Pfeifer won the draw and was named the winning candidate. She was issued a certificate of election under SDCL 9–13–27.2.

[¶ 5.] Becker petitioned for writ of certiorari, which was granted, and the matter set for hearing. Becker also filed a complaint contesting the election pursuant to SDCL ch 12–22. Following a hearing, the trial court concluded the election was valid and declared Pfeifer the winning candidate. The court quashed Becker's petition for writ of certiorari to review the proceedings of the recount board. Becker appeals raising three issues:

---

1. We note there has been media coverage of this case regarding the delay and expense involved in this dispute. This Court has no knowledge of the expenses involved, but sets forth the following facts as to the issue of alleged delay: Notice of appeal was filed by Becker on July 28, 1998 following the trial court's filing its order and judgment on July 15. Appellant's initial brief was due September 12, 1998. On September 11, this Court received a stipulation from the parties' attorneys to extend the time for filing the appellant's initial brief to September 27, 1998. On December 16, appellant's reply brief was filed and the appeal placed on the Court's ready calendar that same date. Sua sponte, we placed the appeal on our expedited calendar because of the importance of this litigation to the continuity and stability of the city's government.

2. This statute provides in part that any candidate defeated in a municipal election by five votes or less may request a recount.

1. Whether the certiorari provisions of SDCL ch 12–21 governing recounts apply to municipal elections.

2. Whether the recount board exceeded its jurisdiction.

3. Whether irregularities in the election, ballot counting, and recount resulted in the free and fair expression of the will of the voters.

Additional facts will be presented as they are relevant to the discussion of the issues in this appeal.

## ANALYSIS AND DECISION

**[¶ 6.] 1. Whether the certiorari provisions of SDCL ch 12–21 governing recounts apply to municipal elections.**

[¶ 7.] Becker petitioned for writ of certiorari to review the proceedings of the recount board. The trial court quashed the writ and dismissed on grounds that municipal recount board proceedings may not be reviewed by writ of certiorari and on grounds that there was no evidence the board exceeded its jurisdiction sufficient to invoke SDCL ch 21–31 governing certiorari (see issue two below). Becker argues the trial court erred and that SDCL ch 12–21 provides a basis for granting certiorari in municipal elections.

[¶ 8.] SDCL ch 12–21 governs election recounts and provides for certiorari proceedings under SDCL 12–21–47 through 12–21–59. SDCL 12–21–6 provides where this chapter shall apply:

> Except in school and municipal elections and as provided in § 12–21–18, the provisions of this chapter apply to the recount of ballots cast in any election conducted.

This statutory language clearly excludes municipal elections but Becker argues the exclusion relates only to "recounts of ballots" and not to the appeal process following a recount.

[¶ 9.] Becker's argument fails to consider the well-established rules of statutory construction that language of the statute is given its plain meaning and must be considered as a whole.

Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.

*Taylor Properties, Inc. v. Union County,* 1998 SD 90, ¶ 14, 583 N.W.2d 638, 641 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17; *US West Communications, Inc. v. Public Utilities Comm'n,* 505 N.W.2d 115, 122–23 (S.D.1993)).

[¶ 10.] By plain language, the provisions of SDCL ch 12–21, including SDCL 12–21–47 through 12–21–59 regarding certiorari, do not apply to municipal elections. Therefore, Becker is limited to the remedies regarding recounts provided by SDCL ch 9–13 governing municipal elections. Examination of the legislative history of SDCL 9–13–27.4 shows this was the legislature's intent. Effective July 1, 1984, the South Dakota legislature added a new section to SDCL ch 9–13. This new section, SDCL 9–13–27.4, provided that "[n]otwithstanding any other provisions of law, recounts of municipal ballot questions, initiatives, referendum and recall *shall be conducted pursuant to the provisions set forth in chapter 12–21.*" (emphasis added). During the 1995 legislative session, this statute was amended to its current version as follows:

> Notwithstanding any other provisions of law, recounts of municipal ballot questions shall be conducted when, within five days after completion of the official canvass of a municipal ballot question election at which a question is approved or disapproved by a margin not exceeding two percent of the total votes cast in the election, any three registered voters of the municipality file a petition duly verified by them, setting forth that they believe a recount will change the outcome. A recount board shall be appointed by the finance officer

who shall appoint one person on each side of the question and one person who shall be mutually agreed upon by the other two appointed. The recount shall be conducted according to the provisions of § 9–13–27.3. So, effective July 1, 1995, the legislature demonstrated its intent that certiorari under SDCL ch 12–21 not be available to challenge a recount of ballots in a municipal election.

[¶ 11.] SDCL 9–13–27.3 provides that "[a]ny question arising on the recount shall be determined by majority vote of the recount board." The legislature did not specifically provide for certiorari in a municipal election dispute.[3] The trial court did not err in determining that certiorari was not available under SDCL ch 12–21.

[¶ 12.] **2. Whether the recount board exceeded its jurisdiction.**

[¶ 13.] As noted above, the trial court's order was also based on grounds that there was no evidence the recount board exceeded its jurisdiction sufficient to invoke the general certiorari provisions in SDCL ch 21–31. SDCL 21–31–1 provides:

A writ of certiorari may be granted by the Supreme and circuit Courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and there is no writ of error or appeal nor, in the judgment of the court, any other plain, speedy, and adequate remedy.

This Court's scope of review is confined to questions regarding the jurisdiction of the board and whether the board regularly pursued the authority conferred upon it. SDCL 21–31–8; *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 454 (S.D.1979). Writ of certiorari is not the proper remedy for review of alleged errors or irregularities in a proceeding. *Burlington Northern R. Co. v. Circuit Court*, 497 N.W.2d 440, 442 (S.D.1993).

[¶ 14.] Before we address Becker's specific claim under this issue, we note that in two prior cases involving municipal elections, this Court has declared that a writ is an extraordinary remedy and not available to challenge municipal elections because another adequate remedy exists, namely the election contest statutes in SDCL ch 12–22. In *Cormick v. Ramsey*, 27 S.D. 302, 130 N.W. 768 (1911), Cormick filed a petition for writ of certiorari supported by an affidavit alleging that votes that should have been counted in an election for sale of intoxicating liquors in the city of Woonsocket were rejected by election officials. We affirmed the order quashing and dismissing the petition on grounds that the election contest statutes provided Cormick with a plain, speedy and adequate remedy. More recently, in *Sorenson v. Rickman*, 486 N.W.2d 259, 261 (S.D.1992), which reaffirmed *Cormick*, we reversed an order issuing a writ of prohibition that would have prohibited submission of an annexation question to the voters of the city of Deadwood. A stay of this order was granted and the voters of Deadwood defeated the proposed annexation. We held an adequate remedy existed in the election contest statutes to challenge the election results and that Sorenson was not entitled to the issuance of the extraordinary writ.

[¶ 15.] Notwithstanding this legal precedent, Becker seeks a writ claiming that the recount board exceeded its jurisdiction by misapplication of the law, specifically by not applying this Court's holding in *McIntyre v. Wick*, 1996 SD 147, 558 N.W.2d 347 regarding the validity of ballots containing extraneous marks. Under certiorari, this Court may consider only whether the recount board had jurisdiction to recount the ballots and whether it regularly pursued its authority in doing so. *Save Centennial Valley Ass'n*, 284 N.W.2d at 458. Jurisdiction is not based on a right or wrong decision regarding the facts or the law of a disputed issue.

---

3. At the hearing, the trial court noted other situations where the legislature has provided for finality at an early stage of the proceedings, such as disputes in school board elections and in small claims courts. Except for allegations of a corrupt election and procedures provided for their resolution under SDCL ch 12–22, the legislature has determined the recount board is the final arbiter of any question arising out of a municipal election recount dispute.

"The test of jurisdiction is whether there was power to enter upon the inquiry and not whether the determination by the court [or in this case, a board] of a question of law or fact involved is correct." *Janssen v. Tusha*, 68 S.D. 639, 5 N.W.2d 684, 685 (1942).

[¶ 16.] SDCL 9–13–27.3 and –27.4 provide jurisdiction to the recount board and establish procedures that shall be followed in the recount. The record indicates the board was established and the recount procedures followed according to statute. Thus, the board had jurisdiction to recount the ballots and resolve disputes by majority vote; it regularly pursued its authority.

[¶ 17.] We do not have before us, and therefore do not decide, the case where a recount board has completely abused its authority and acted against or without reason. Neither party has made such an allegation in this case. "[C]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding, at least in the absence of fraud, or willful and arbitrary disregard of undisputed and indisputable proof wherein credibility of witnesses is not involved." *Willard v. Civil Service Bd.*, 75 S.D. 297, 63 N.W.2d 801 (1954). In other words, there must be a showing that the board acted either fraudulently or in an arbitrary or willful disregard of undisputed and indisputable proof.

[¶ 18.] As noted above, this Court's review does not extend to the validity of the ballots. *Burlington Northern R. Co.*, 497 N.W.2d at 442. Jurisdiction encompasses the power to decide erroneously as well as correctly. *Ruffing v. Jameson*, 80 S.D. 362, 123 N.W.2d 654, 658 (1963); 20 AmJur2d Courts, *Jurisdiction* § 55 (1995). Nevertheless, there is insufficient evidence that the recount board erred when it determined the validity of the disputed ballots. SDCL 9–13–27.3 provides that "[a]ny question arising on the recount shall be determined by majority vote of the recount board." The plain meaning of this statute presupposes that the holding of *McIntyre, supra*, which concerned a state legislative ballot, does not apply to the recount of ballots in a municipal election.[4] Determination of the validity of these ballots is legislatively granted to the assembled board and not to the courts. The trial court did not err in concluding the board did not exceed its jurisdiction.

[¶ 19.] **3. Whether the irregularities in the election, ballot counting, and recount resulted in the free and fair expression of the will of the voters.**

[¶ 20.] Becker also contested the election under SDCL ch 12–22. "The basic question in an election contest is whether the election, despite irregularities in its conduct, resulted in a free and fair expression of the will of the voters on the merits." *Larson v. Locken*, 262 N.W.2d 752, 753 (S.D.1978). The court is limited under an election contest proceeding to either upholding the entire election or declaring it invalid. *Id.* Here, the court may not, as Becker urges on appeal, declare certain ballots void while upholding the election. *Id.* at n. 1. The trial court held the election was valid, that it resulted in a free and fair expression of the will of the voters, and that Pfeifer was the winning candidate.

[¶ 21.] Alleged irregularities in this election include the manner in which thirteen of the ballots were counted as described above. Also, twenty-eight absentee ballots were not stamped in accordance with SDCL 12–19–47 and 12–20–6 prior to their being counted. Becker claims other irregularities precluded this election from resulting in a free and fair

---

4. Becker extracts part of a statement from *McIntyre* and urges this language requires the courts resolve the recount dispute. The entire sentence reads: "We hold that while the legislature has the exclusive authority to finally determine who will be seated in a legislative election contest proceeding, this Court has jurisdiction to review irregularities and errors in the tabulation of votes in *any recount proceeding*." *McIntyre*, 1996 SD 147, ¶ 9, 558 N.W.2d at 351 (emphasis added). This statement, taken out of context from a case involving state legislative elections, does not control the outcome of this appeal or prevail over a statute that directly addresses the issue.

expression of the will of the voters, however, these claims are not supported by the record.[5]

■ [¶ 22.] The trial court found the failure to stamp the absentee voter ballots was a mistake of the election officials, not the voters. Although this stamp is required by statute, this Court has previously stated that " '[i]t is not the policy of the law to disenfranchise voters because of an election official's mistakes, negligence, or misconduct.' " *Christensen v. Devany*, 500 N.W.2d 213, 214 (S.D.1993) (quoting *Abbott v. Hunhoff*, 491 N.W.2d 450, 452 (S.D.1992)).[6] Declaring these ballots void for lack of the official stamp would place form over substance, ignore the intent of the statute, and disenfranchise twenty-eight voters. *Id.*[7] Though unstamped, these ballots had already been duly recorded by the superintendent of the precinct and entered into the poll books. After the vote count, the total number of ballots cast balanced with the numbers of persons recorded in the poll books as having voted. "No person should be deprived of his right to vote because of the neglect or carelessness of election officials unless that conduct has been carried to such an extent as to affect the true outcome of the election and put the results in doubt." *Id.* (quoting *Johnson v. Trnka*, 277 Minn. 468, 154 N.W.2d 185, 187 (Minn 1967)).

[¶ 23.] Moreover, the trial court determined that the disputed ballots involved less than two percent of the total number of votes cast[8] and that the allegations of fraud were not supported by sufficient evidence. Any irregularities in the conduct of this election were held to be minor and, viewed cumulatively, did not undermine the free and fair expression of the will of the voters for this seat on the Aberdeen City Commission. *Compare Larson, supra* (irregularities included no applications made for absentee ballots, some absentee ballots picked up by candidate Locken and returned by persons other than the absentee voter, including Locken, and absentee ballots marked in the presence of Locken; disputed votes comprised fifteen percent of the total votes cast). The facts of *Larson* are clearly distinguishable and the trial court did not err in declaring the election valid.

[¶ 24.] We affirm.

---

5. Specifically, Becker claims an "unauthorized person" opened the absentee ballots and that the ballots were out of the sight of this person after they were opened for a sufficient length of time and distance that the potential for ballot tampering existed. "It is the opportunity, irrespective of whether any fraud was committed or intended, that is sufficient ground upon which to invalidate the votes." *Larson*, 262 N.W.2d at 756. However, the record indicates insufficient evidence to support these allegations that even the opportunity for fraud existed and the trial court so found.

6. *See also* SDCL 12–19–34, regarding absentee voting, which provides:
   No mere informality in the matter of carrying out or executing the provisions of this chapter shall invalidate the election or authorize the rejection of the returns thereof, and the provisions of this chapter shall be liberally construed for the purposes herein expressed or intended.

7. In *Larson*, 262 N.W.2d at 756, this Court stated that "failure to affix the official stamp to a ballot invalidates all such ballots." (citing *Lingo v. Noonan*, 75 S.D. 442, 67 N.W.2d 779 (1954) and *Cahalan v. Terry*, 73 S.D. 531, 45 N.W.2d 460 (1950)). In *Abbott* and, more recently in *Chris-* tensen, we distinguished *Larson* on its facts recognizing that the irregularities in the absentee ballots in *Larson* had more to do with mistakes by the voters and candidate Locken, *see* text at ¶ 23, *infra*, than mistakes or negligence by election officials. As a result, the *Larson* election was shrouded in doubt. That is not the case here. In *Christensen* we stated:

   'To hold that all prescribed duties of election officers are mandatory, in the sense that their nonperformance shall vitiate the election, is to ingraft upon the law the very powers for mischief it was intended to prevent. If the mistake or inadvertence of the election officer shall be fatal to the election, then his intentional wrong may so impress the ballot as to accomplish the defeat of a particular candidate or disfranchisement of a party.'

   *Christensen*, 500 N.W.2d at 215 (citation omitted). We also stated in *Christensen:* "We limit this holding to the facts of this case and do not intend to detract from any of the cases where this court found the statute was intended to cover the specific irregularities." *Id.* at n. 7.

8. There were 2,140 votes cast involving Becker and Pfeifer; 41 of these ballots were disputed.

[¶ 25.] MILLER, Chief Justice, and SABERS, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 26.] AMUNDSON, Justice, concurs in result.

AMUNDSON, Justice (concurring in result).

[¶ 27.] I agree with the result, but would go further to hold that election official's mistakes, negligence or misconduct, such as failure to stamp absentee ballots, should no longer invalidate ballots and disenfranchise voters unless it is shown that irregularities amount to more than a minor mistake or neglectful act by an official. In *Larson v. Locken,* this Court held that failure to affix the official stamp to an absentee ballot which, "SDCL 12–20–6 has specifically made mandatory ... invalidates all such ballots." 262 N.W.2d at 756 (internal citations omitted). *Larson,* has not been followed in the present case and should be overruled as far as it is inconsistent with this decision. I would reiterate it is, "not the policy of this state to disenfranchise a voter because of an election official's mistake or negligence, but rather, 'to determine and carry out the intent of the elector when satisfied that the elector has endeavored to express such intent in the manner prescribed by law[.]' " *Christensen,* 500 N.W.2d at 215 (quoting *Duffy v. Mortenson,* 497 N.W.2d 437, 438 (S.D.1993) (citations omitted)). Election results that show a free and fair expression of the will of the voters should not be overturned due to the mistakes or neglect of an election official.