2002 SD 85

In the Matter of the PETITION FOR WRIT OF CERTIORARI AS TO THE DETERMINATION OF ELECTION ON THE BROOKINGS SCHOOL DISTRICT'S DECISION TO RAISE ADDITIONAL GENERAL FUND Property Tax Revenues in the Amount of $750,000.00,

and

In the Matter of the Election Contest as to the Issue of the Brookings School District's Decision to Raise Additional General Fund Property Tax Revenues in the Amount of $750,000.00,

Aelred J. Kurtenbach and Craig Johnson, Petitioners and Appellees,

Edwin J. Luetzow, Respondent and Appellant.

No. 22178.

Supreme Court of South Dakota.

Argued on April 24, 2002.

Decided July 17, 2002.

Richard J. Helsper of Glover, Helsper & Rasmussen, Brookings, South Dakota, Attorneys for petitioners and appellees Kurtenbach and Johnson.

Ellie M. Vandenberg, Volga, South Dakota Attorney for respondent and appellant.

KONENKAMP, Justice.

[¶ 1.] This case presents the question whether a petition for recount in a school district election is sufficient, when it is not verified as required by statute. After a school district referendum election approving a tax increase, a recount board was convened on a petition that was not verified. The recount board overturned the election. We conclude that absent verification, the recount petition was invalid, and because the recount board was convened invalidly, its decision overturning the school district election was also invalid. Thus, the circuit court's grant of a writ of certiorari reinstating the voters' approval of the tax increase is affirmed.

## A.

### Background

[¶ 2.] On May 14, 2001, the Brookings School Board unanimously passed a $750,000 tax increase, authorized under SDCL 10–13–36.[1] After a petition to refer

---

1. The full text of § 10–13–36 states:

   The governing body of a taxing district may exceed the limit pursuant to § 10–13–35 through the imposition of an excess tax levy. The governing body of a taxing district may impose an excess tax levy with an affirmative two-thirds vote of the governing body on or before July fifteenth of the year prior to the year the taxes are payable. The decision of the governing body to originally impose or subsequently increase an excess tax levy shall be published within ten days of the decision. The decision may be referred upon a petition signed by at least five percent of the registered voters in the taxing district and filed with the respective governing body within twenty days of the publication of the decision. The referendum election shall be held on or before October first preceding the year the taxes are payable. The taxing districts may not exceed the levy limits provided in chapter 10–12 except for the provisions in § 10–12–36.

this decision to a public vote, a referendum election was held on September 18, 2001. The question for the voters was whether the tax increase should be approved or disapproved. The final vote tally showed that 2,211 approved and 2,181 disapproved the increase.

[¶ 3.] On September 21, 2001, five persons signed and filed with the School Board a document seeking a recount. As this document was clearly not in proper form, the business manager for the school district notified one of the signers of its insufficiency. Thereafter, with the assistance of counsel, a new recount petition was prepared, signed by four voters, and submitted.[2] It was notarized, but not verified. Furthermore, although the notary's declaration on the petition stated "subscribed and sworn to before me," the notary later confirmed that she administered no oath to the signatories, either orally or in writing. The business manager accepted the petition and arranged for a three-person recount board in accord with SDCL 13–7–19.3, using the procedures in a manual published by Associated School Boards of South Dakota.

[¶ 4.] In the process of counting the ballots, the recount board members discovered that 77 absentee ballots had not been properly stamped. The absentee voters themselves had fully complied with all election law requirements and their ballots were in proper form. In processing these ballots on election night, however, one of the precinct officials had forgotten to place the official precinct ballot stamp on them. Consequently, the recount board members voted 2–1 to discard all 77. Of these, 55 approved the tax increase and 22 disapproved.[3] The recount board also decided to include five over-marked ballots and exclude three ballots, chosen at random, to reconcile the ballot count with the total number who voted. After these actions, the recount board reported that the new tally changed the result: 2,159 votes disapproved the tax increase and 2,154 approved. Thus, the recount board overturned the tax increase.

[¶ 5.] In response to the recount board's decision, two registered voters, who had participated in the referendum election, petitioned the circuit court to issue a writ of certiorari under SDCL 21–31–1, requiring the initial tally to be entered as the voters' decision. They asserted that the petition for recount was legally defective, being unverified, and the business manager therefore had no authority to appoint a recount board. They contended that because the recount board acted without jurisdiction, its decision was a nullity, and a writ of certiorari was the only expeditious remedy available. The respondents were the three recount board members: Edwin J. Luetzow, one of the signers of the petition for recount, Ronald C. Aho, a representative of the other side, and James Gilkerson, selected by the other

---

**2.** The attorney who prepared this petition is not appellate counsel.

**3.** In our most recent decisions concerning this issue, we have ruled that despite the requirement that election officials stamp absentee ballots with the official stamp, it is "not the policy of this state to disenfranchise a voter because of an election official's mistake or negligence, but rather, 'to determine and carry out the intent of the elector when satisfied that the elector has endeavored to express such intent in the manner prescribed by law[.]'" *Christensen v. Devany,* 500 N.W.2d 213, 215 (S.D.1993) (quoting *Duffy v. Mortenson,* 497 N.W.2d 437, 438 (S.D.1993) (citations omitted)). *See also Becker v. Pfeifer,* 1999 SD 17, ¶ 22, 588 N.W.2d 913, 919; and *Becker,* 1999 SD 17 at ¶ 27, 588 N.W.2d at 919 (Amundson, J., concurring: "Election results that show a free and fair expression of the will of the voters should not be overturned due to the mistakes or neglect of an election official.")

two members. The circuit court granted the writ reinstating the initial tally as the official result of the election, which approved the tax increase.

[¶ 6.] On appeal, Luetzow contends that (1) the circuit court erred in granting the writ of certiorari on the ground that the recount board exceeded its jurisdiction; (2) the court erred in granting a writ of certiorari when the petitioners had a plain, speedy, and adequate remedy at law; and (3) the court erred in finding that the opt-out referendum election process, including the official recount, did not result in a free and fair expression of the will of the voters of the Brookings School District. We need not address the last argument because we deem the first two to be dispositive.[4]

## B.

### Recount Board Invalidly Convened

[¶ 7.] We begin our analysis with SDCL 13–7–19.3, which provides in relevant part:

A recount shall be conducted when, within five days after completion of the official canvass of a school district regular or special election at which a question is approved or disapproved by a margin not exceeding two percent of the total votes cast in the election, any three registered voters of the school district file a petition *duly verified by them,* setting forth that they believe a recount will change the outcome. A recount board shall be appointed by the business manager who shall appoint one person on each side of the question and one person who shall be mutually agreed upon by the other two appointed....

(Emphasis added). It is undisputed that the margin of approval was less than two percent of the total votes cast and that

four registered voters signed a notarized petition setting forth their belief that a recount would change the outcome. However, it is also undisputed that none of the signatories swore, under oath, that the content of the petition was true. Thus, one of the three statutory conditions for investing the business manager with the authority to appoint a recount board remained unmet.

[¶ 8.] The concept of verification has a special meaning in the law. The first definition assigned to the word "verify" by Black's Law Dictionary is "[t]o confirm or substantiate by oath or affidavit." 1561 (7th ed 1999). Thus, a "verification" is a "[c]onfirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition; [or][an][a]ffidavit of [the] truth of [the] matter stated[;] ... the object of verification is to assure good faith in averments or statements of parties." *Id.* Here, no oath or affidavit verified the petition for recount. Verification is important, particularly when, as here, the petition impugned the result of an election.

[¶ 9.] We faced the verification requirement in a recent case. *See In the Matter of the Election Contest as to Watertown Special Referendum Election of October 26, 1999, Pertaining to Referred Ballot Issues No. 1 and 2,* 2000 SD 43, 607 N.W.2d 920. There, both the majority and dissenters agreed that no verification resulted unless the signatories took an oath to affirm the truth of the matter asserted, the majority holding that an oral verification sufficed, the dissenters believing that a written verification was required. *Id.* at ¶¶ 9, 14, 21, 607 N.W.2d at 923, 924, 926.

[¶ 10.] Being unverified, the petition presented to the business manager was invalid. Thus, the trial court correctly

4. We granted expedited briefing in this appeal.

reasoned that SDCL 13–7–19.3 did not vest the business manager with the authority to appoint a recount board.[5] Without that authority, as the court ruled, the recount board had no jurisdiction to take "any action at all."

[¶ 11.] Nonetheless, Luetzow argues that courts have no authority to review the recount board's decision. *See* SDCL 12–21–6 (certiorari proceedings are excluded in school and municipal elections). He quotes footnote 3 from *Becker:* "Except for allegations of a corrupt election and procedures provided for their resolution under SDCL ch 12–22, the [L]egislature has determined the recount board is the final arbiter of any question arising out of a municipal election recount dispute." 1999 SD 17 at ¶ 11 n. 3, 588 N.W.2d at 917 n. 3. Luetzow insists that school district election recounts fall under the same category. However, in *Becker,* we also wrote:

> Under certiorari, this Court may consider only whether the recount board had jurisdiction to recount the ballots and whether it regularly pursued its authority in doing so.

\* \* \*

"The test of jurisdiction is whether there was power to enter upon the inquiry and not whether the determination by the court [or in this case, a board] of a question of law or fact involved is correct." *Janssen v. Tusha,* 68 S.D. 639, 5

N.W.2d 684, 685 (1942) (internal citations omitted).

*Id.* at ¶ 15, 588 N.W.2d at 917–18.

[¶ 12.] We have never regarded as unreviewable a decision of a recount board called into existence invalidly. On the contrary, SDCL 21–31–1 specifically empowers courts to invoke writs of certiorari when "boards ... have exceeded their jurisdiction[.]" As the board was invalidly convened, it acted without jurisdiction.

## C.

### No Other Adequate Remedy

[¶ 13.] A writ of certiorari issuing in equity is an extraordinary remedy; like a writ of prohibition, it may issue only when the petitioner is without "any other plain, speedy, and adequate remedy." SDCL 21–31–1; *Sorenson v. Rickman,* 486 N.W.2d 259, 261 (S.D.1992).[6] Luetzow argues that the petitioners had a plain, speedy, and adequate remedy, namely, an election contest as provided under SDCL chapter 12–22. However, the purpose of an election contest, as contrasted with a recount, is not to have certain ballots declared void and to maintain others, but rather to determine whether the election, despite irregularities, resulted in a free and fair expression of the will of the voters on the merits, and to obtain a new election if it did not. *Larson v. Locken,* 262 N.W.2d 752, 753 (S.D.1978). As the North Dakota Supreme Court explained in *State ex rel. Olson v. Thompson,* a recount dif-

---

5. The trial involved two claims, brought and heard simultaneously. The first was the petition to issue a writ of certiorari; the second, argued in the alternative, was an action seeking an election contest. Not only do we affirm the issuance of the writ, but we also hold that an election contest would not provide a remedy. We review a trial court's entry of a writ of certiorari only to determine whether

the court exceeded its jurisdiction. *Cole v. Bd. of Adjustment,* 1999 SD 54, ¶ 10, 592 N.W.2d 175, 177.

6. Luetzow also cites *State ex rel. Cormick v. Ramsey,* 27 S.D. 302, 130 N.W. 768 (1911), for the rule that school and municipal elections cannot be reviewed by an extraordinary writ because an adequate and speedy remedy exists at law.

fers from a contest in that a recount, clearly and unmistakably, if requested and made, is a part of the election process, while a contest is a challenge of the election process itself. 248 N.W.2d 347, 356 (N.D.1976).

[¶ 14.] Here, the root problem, of course, was the validity of the 77 unstamped ballots; there was no question of the validity of the election process itself. Therefore, an election contest would provide no remedy. Issuance of a writ of certiorari was the only alternative open to petitioners as a means of challenging the recount board's jurisdiction to act. Luetzow's remaining arguments are without merit.

[¶ 15.] As the petition for recount was invalid, so also was the decision of the recount board, since it acted without jurisdiction.

[¶ 16.] Affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and ZINTER, Justices, concur.